## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**RONALD WEBSTER**                                                    **CIVIL ACTION**

**VERSUS**                                                                    **No. 07-4812**

**STATE FARM FIRE AND CASUALTY INSURANCE CO.**          **SECTION:  I/1**

<u>**ORDER AND REASONS**</u>

Before the Court is a motion *in limine* filed on behalf of defendant, State Farm Fire and Casualty Company ("State Farm"), to exclude the expert witness opinion and testimony of plaintiff's expert, Neil B. Hall ("Hall").[1]  For the following reasons, defendant's motion *in limine* is **DENIED**.

### *BACKGROUND*

Plaintiff, Ronald Webster ("Webster"), owns property in Meraux, Louisiana, that was damaged when Hurricane Katrina made landfall in the New Orleans area on August 29, 2005.[2] During the relevant time period, Webster held a homeowner's insurance policy with State Farm.[3]

---

[1] R. Doc. No. 38.

[2] R. Doc. No. 1, compl. ¶¶ 2, 4.

[3] *Id.* ¶ 3.

1

Webster alleges that, as a result of Hurricane Katrina, his home, garage, patio, gate, and contents were severely damaged by significant wind and wind-blown rain.[4]

Webster filed this lawsuit on August 28, 2007, filing claims against State Farm pursuant to La. Rev. Stat. Ann. §§ 22:658 and 1220 for breach of its duty of good faith and fair dealing, breach of its duty to fairly and promptly adjust claims, and breach of its duty to make a reasonable effort to settle.[5]  Webster argues that State Farm, after receiving satisfactory proof of loss, arbitrarily and capriciously failed to pay the amount of the claim due within thirty days, for purposes of § 22:658, or sixty days, for purposes of § 22:1220.[6]  Webster further alleges breach of the insurance contract, a violation of La. Civil Code article 1997, and a violation of § 22:658.2.[7]

On April 18, 2008, State Farm filed this motion *in limine* seeking to limit or exclude the testimony and report of Webster's damage expert, Hall.[8]  State Farm first argues that Hall's "weather opinions" should be excluded because Hall is not qualified to make such opinions.[9] State Farm also argues that Hall's opinion and report are based on an unreliable methodology and are not supported by sufficient data because Hall:  (1) utilized a methodology designed for investigating fires and explosions instead of weather, (2) presumed that wind damaged the

---

[4] *Id.* ¶¶ 5-6.

[5] *Id.* ¶¶ 16-19, 23-26.

[6] *Id.* ¶¶ 17-18.

[7] *Id.* ¶¶ 13-15, 20-22.

[8] R. Doc. No. 38.

[9] R. Doc. No. 38-2, mem. supp. at 4-5.

structure, and (3) based his opinion on speculation and erroneous or nonexistent facts.[10]  State

Farm contends that because of the unreliability of, and insufficiency of facts supporting, Hall's

report and opinion, Hall's testimony and report should be excluded.[11]


## LAW AND ANALYSIS

### I.      Standard of Law

Rule 702 of the *Federal Rules of Evidence* governs the admissibility of expert witness

testimony.  Fed. R. Evid. 702; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 588, 113

S. Ct. 2786, 2794, 125 L. Ed. 2d 469, 480 (1993); *United States v. Hitt*, 473 F.3d 146, 148 (5th

Cir. 2006).  Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier
> of fact to understand the evidence or to determine a fact in issue, a witness qualified
> as an expert by knowledge, skill, experience, training, or education, may testify
> thereto in the form of an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data, (2) the testimony is the product of reliable principles and
> methods, and (3) the witness has applied the principles and methods reliably to the
> facts of the case.

The United States Supreme Court's decision in *Daubert* "provides the analytical framework for

determining whether expert testimony is admissible under Rule 702."  *Pipitone v. Biomatrix,*

*Inc.*, 288 F.3d 239, 243 (5th Cir. 2002).  Both scientific and nonscientific expert testimony is

subject to the *Daubert* framework, which requires trial courts to make a preliminary assessment

to "determine whether the expert testimony is both reliable and relevant."  *Burleson v. Tex. Dep't*

*of Criminal Justice*, 393 F.3d 577, 584 (5th Cir. 2004); *see Kumho Tire Co., Ltd. v. Carmichael*,

526 U.S. 137, 147, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238, 249-50 (1999).  The burden is on

---

[10] Mem. supp. at 7.

[11] *Id.* at 20.

the plaintiff to prove by a preponderance of the evidence that the expert satisfies the Rule 702 test. *Mathis v. Exxon Corp.*, 302 F.3d 448, 459-60 (5th Cir. 2002).

A number of nonexclusive factors may be relevant to the reliability inquiry, including: (1) whether the technique has been tested, (2) whether the technique has been subjected to peer review and publication, (3) the potential error rate, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether the technique is generally accepted in the relevant scientific community. *Burleson*, 393 F.3d at 584. The reliability inquiry must remain flexible, however, as "not every *Daubert* factor will be applicable in every situation; and a court has discretion to consider other factors it deems relevant." *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004); *see Runnels v. Tex. Children's Hosp. Select Plan*, 167 Fed. App'x 377, 381 (5th Cir. 2006) ("[A] trial judge has 'considerable leeway' in determining '*how* to test an expert's reliability.'" (*citing Kumho Tire*, 526 U.S. at 152, 119 S. Ct. at 1176, 143 L. Ed. 2d at 253)). "Both the determination of reliability itself and the factors taken into account are left to the discretion of the district court consistent with its gatekeeping function under [Rule] 702." *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000).

With respect to determining the relevancy of an expert's testimony pursuant to Rule 702 and *Daubert*, the proposed testimony must be relevant "not simply in the way all testimony must be relevant [pursuant to Rule 402], but also in the sense that the expert's proposed opinion would assist the trier of fact to understand or determine a fact in issue." *Bocanegra v. Vicmar Servs., Inc.*, 320 F.3d 581, 584 (5th Cir. 2003). "'There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelligently and to the best degree the particular issue without

4

enlightenment from those having a specialized understanding of the subject involved in the dispute.'" *Vogler v. Blackmore*, 352 F.3d 150, 156 n.5 (5th Cir. 2003) (*quoting* Fed. R. Evid. 702 advisory committee's note).

## II.    Analysis

Webster's expert, Hall, prepared a building damage assessment on February 14, 2008.[12] The assessment makes five conclusions concerning wind damage to Webster's property:

> 1) Wind sufficiently damaged the garage and residence roofs as to require total replacement of the roof shingles, roof-mounted vents, fascia, soffits, gutters and downspouts.
> 2) Wind sufficiently damaged vinyl siding and the patio roof as to require total replacement of all vinyl siding and the patio roof.
> 3) Water leaking through the roof wet the attic insulation and damaged any flexiduct and fiberboard ductwork in the attic space.
> 4) Water leaking through the roof damaged 2nd floor ceilings, requiring their replacement along with the top 4' of wallboard to access and replace the ceiling board.
> 5) Rain driven through wind-damaged window panes wet drywall on the jambs and under the window sills. This would be true for windows facing east, north and west. This water intrusion was sufficient to damage contents items particularly fabrics, paper products and other porous and semi-porous items.[13]

Concerning State Farm's argument that Hall's "weather opinions" should be excluded, Webster responds that Hall will not be offered as a meteorologist and that Hall reviewed, but did not create or re-create, weather data.[14]  The Court agrees.

---

[12] R. Doc. No. 38-5, mot. *in limine*, ex. C, Hall damage assessment.

[13] *Id.* at 3-4.

[14] R. Doc. No. 47, mem. opp'n at 6.

Hall's report contains a section entitled "Synopsis of Weather Conditions," which outlines the weather conditions he considered as affecting Webster's property near the time of Hurricane Katrina's landfall.[15]  Hall's conclusions concerning wind damage and recommendations for repair do not create new weather information; Hall's use of the weather data is, rather, a basis for reaching those recommendations and conclusions.

Concerning the reliability of Hall's opinion, State Farm argues that his methodology is flawed because it is taken from the National Fire Protection Association Guide for Fire and Explosion Investigations ("NFPA") 921.[16]  State Farm argues that Hall has not produced anything, "no journal articles, no peer reviews, no pamphlets, no treatises," which support his use of the NFPA 921 as a valid methodology when investigating weather-event related structure failure.[17]

It does not appear to the Court that Hall's opinion is based solely upon the NFPA, nor is Hall's testimony regarding his procedure consistent with State Farm's characterization of Hall's methodology.[18]  Hall's use of the NFPA 921 as part of his methodolody is an insufficient basis to

---

[15] Hall assessment at 2.

[16] Mem. supp. at 8-9.

[17] *Id.*

[18] State Farm argues that "there is no reason to trust that Hall's use of a fire investigation manual to conclude that wind destroyed the Webster house prior to the arrival of flood water is in any way scientifically valid or capable of producing reliable results **in this context**."  *Id.*  Looking to Hall's testimony, however, shows that his methodology is the use of the scientific method, which was codified in the NFPA 921.

> Q.  Turning back to your report, Mr. Hall, you have in there a section called "Investigation Methodology."  What is the methodology that you employed in writing the report and giving your opinion?
> A.  The background for the methodology is the use of the scientific method.  The high points of the methodology are what's reflected in the first paragraph [of the "Investigation Methodology" section of Hall's report].
> Q.  The scientific method, are you referring to the scientific method as you have before that is in the NFPA 921?

exclude Hall's testimony as unreliable.  *See United States v. 14.38 Acres of Land*, 80 F.3d 1074, 1077 (5th Cir. 1996) ("As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.").

State Farm also argues that Hall's methodology is flawed because he starts with a presumption that wind caused the damage to the Webster's property.  Hall's report makes no mention of this presumption, and his deposition testimony is not consistent with State Farm's characterization of his methodology.[19]  This argument goes to the weight of Hall's testimony, not its admissibility.

State Farm next attacks the factual basis for Hall's opinion as speculative and based upon erroneous or nonexistent facts.  With respect to this argument, State Farm argues that the interview with Webster provided the only factual basis for Hall's opinion that the vinyl siding, patio roof, attic insulation, flexiduct, fiberboard ductwork, and second-floor ceiling, along with the top four feet of wallboard, were sufficiently damaged by wind.[20]  However, Hall's assessment states that he also utilized weather data for the area around Webster's house in determining that

---

> A.  Yes.  I said the scientific method preceded NFPA 921, but it was codified in NFPA 921 for fire investigators, and I've always felt that was a good beginning to try and come up with a standard methodology for writing hurricane reports.

R. Doc. No. 38-8, mot. *in limine*, ex. D, Hall dep. at 146.

[19] Hall's deposition testimony indicates that in slab cases, *i.e.*, in cases where the only part of a structure remaining is the slab, his research hypothesis was wind and his null hypothesis was flood.  R. Doc. No. 47-7, mem. opp'n, ex. E, Hall dep. at 62-64. However, because Webster's house was not completely destroyed, Hall was able to utilize photographs and an interview with Webster to support his research hypothesis.  *Id.*  Hall did not use such a presumption in this case.  *Id.* at 66-67.

[20] Mem. supp. at 10-14.  These wind-damaged items are those listed in Hall's conclusions numbered one through four.  Assessment at 3.

the damage was caused by wind.[21]  Furthermore, "'[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 250 (5th Cir. 2002) (*quoting Daubert*, 509 U.S. at 596, 113 S. Ct. at 2798, 125 L. Ed. 2d at 484).

Finally, State Farm attacks the factual basis for Hall's opinion that rain driven through wind-damaged window panes caused rain damage to the drywall on the jambs and under the window sills and to the contents on the second floor.[22]  State Farm argues that Hall used nonexistent evidence to come to such a conclusion.

Hall admits that there was no evidence of wind-damaged windowpanes on the second floor.[23] Hall contends that the contents could still have been damaged due to wind-driven rain getting around the window frames, wetting the drywall, jambs, and sill.[24]

Hall admits that during his interview with Webster, Webster did not tell him that the contents on the second floor were damaged by wind or that there was water intrusion into the jambs.[25]  Hall bases this conclusion solely on the force of the wind, which he claims would have damaged the windows allowing rain to enter.[26]  Hall admits that all of the second-floor contents from the floor level to thirty-one inches above the floor would have been damaged by

---

[21] Assessment at 2.

[22] This is Hall's conclusion number five.  *Id.* at 4.

[23] Mem. supp., ex. D, Hall dep. at 131.

[24] *Id.* at 131-32.

[25] Mem. opp'n, ex. E, Hall dep. at 58-59.

[26] *Id.* at 59.

floodwater.[27]  At this point, the Court cannot state whether any second-floor contents and/or portions of the dwelling were wind-damaged above the thirty-one-inch line.  Such evidence needs to be developed at trial.  The plaintiff, himself, may be able to testify as to water damage above the flood line.  If the Court would have been presented with a motion for summary judgment and admissible summary judgment-type evidence, the Court's conclusion may have been different.

Accordingly,

**IT IS ORDERED** that defendant's motion *in limine* to exclude Hall's expert testimony[28] is **DENIED**.

New Orleans, Louisiana, May 14, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**

---

[27] *Id.*

[28] R. Doc. No. 38.